| | |
|---|---|
| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |

| | |
|---|---|
| **EMILY MCNAMARA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**GLOBAL LENDING SERVICES LLC**<br><br>*Defendant.* | CIVIL ACTION NO. 4:25-cv-06058<br><br>Honorable Judge Andrew S Hanen<br><br>Magistrate Judge Yvonne Y Ho |

**JOINT DISCOVERY/CASE MANAGEMENT PLAN UNDER**
**RULE 26(F) FEDERAL RULES OF CIVIL PROCEDURE**

**1.     State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended for each party.**

The Rule 26(f) meeting was held via videoconference, on February 13, 2026. Anthony Paronich, counsel for Plaintiff, and Sabrina Neff, Ryan DiClemente, and Colleen Fox (*pro hac vice* to be filed), counsel for Defendant, attending the meeting.

**2.     List the cases related to this one that are pending in any state or federal court with the case number and court.**

The parties are not aware of any related cases.

**3.     Briefly describe what this case is about.**

This is a putative TCPA class action against Global Lending Services LLC arising from alleged repeated prerecorded and artificial-voice calls to Plaintiff's cellular telephone without her consent. Plaintiff alleges that Defendant placed numerous calls and left voicemails intended for

1

another individual, despite Plaintiff informing Defendant that it had the wrong number. Plaintiff further alleges that some of the messages used artificial or prerecorded voice technology in violation of 47 U.S.C. § 227(b). The case seeks to certify a nationwide "Robocall Class" consisting of individuals whose cellular telephone numbers received calls using an artificial or prerecorded voice within four years prior to the filing of the Complaint. Plaintiff seeks statutory damages of $500 to $1,500 per call, as well as injunctive relief prohibiting further unlawful calling practices.

GLS denies the allegations in the Complaint, and particularly that this case is appropriate for class treatment. GLS maintains robust policies and procedures for TCPA compliance, including use of the Federal Communications Commission's Reassigned Numbers Database ("RND"). The RND identifies telephone numbers that have been potentially reassigned so that users can avoid calling the wrong person. If the RND wrongly indicates that a number has not been permanently disconnected (and thus is eligible for reassignment), the caller is entitled to a safe harbor for any calls inadvertently made to the number. The RND safe harbor is designed to encourage use of the database and shield well-meaning callers from TCPA liability. In this case, GLS called the number at issue intending to reach a GLS borrower who gave consent to be called. Before calling, GLS ran the phone number through the RND. The RND indicated that the number had not been permanently disconnected. GLS submits that its use of the RND is a complete defense to Plaintiff's individual claims.

**4.     Specify the allegation of federal jurisdiction.**

The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law, specifically under 47 U.S.C. § 227(b). The Court has specific personal jurisdiction over the Defendant because Defendant delivered, or caused to be delivered, the subject calls to Plaintiff's cellular telephone in this District, and Plaintiff received the subject

calls in this District. Specifically, the area code of Plaintiff's telephone number (409) is geographically linked to this District, and Plaintiff is a resident of Galveston, Texas.

**5.     Name the parties who disagree and the reasons.**

Not applicable.

**6.     List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.**

The parties do not presently anticipate adding any additional parties. Should discovery reveal a basis to add parties, the parties will promptly meet and confer and seek leave of Court, if necessary.

**7.     List anticipated interventions.**

The parties are not aware of any anticipated interventions.

**8.     Describe class-action issues.**

Plaintiff intends to file a motion for class certification at the earliest practicable time. The class is presently defined as:

All persons within the United States: (1) to whose cellular telephone numbers (2) Defendant, or a third party on their behalf, placed a call using artificial or pre-record messages (3) within the four years prior to the filing of the Complaint.

Class-related issues are expected to include ascertainability, commonality and predominance of common issues (including Defendant's calling practices and use of artificial or prerecorded voice messages), typicality, adequacy of representation, and the appropriateness of class-wide resolution under Rule 23(b)(3). Plaintiff contends this case is well-suited for class treatment because it arises from GLS's uniform dialing practices, including its use of prerecorded or artificial voice technology and its alleged reliance on the Reassigned Number Database ("RND"). The central questions—whether GLS's calling system violates the TCPA and whether

the RND safe harbor applies—are common to all putative class members and can be resolved on a classwide basis.

GLS does not believe this case is appropriate for class treatment and contends that individual issues will predominate. Specifically, GLS will show that Plaintiff's claims are not typical of the putative class and are subject to unique defenses including, but not limited to, the safe harbor defense discussed above. Before incurring the burden and expense of class discovery, the merits of Plaintiff's individual claims should be addressed first. This includes, but is not limited to, GLS's use of the RND and its entitlement to the safe harbor established in 47 C.F.R. 64.1200(m).

**9.     State whether each party represents that it has made the initial disclosures required by Rule 26(a).  If not, describe the arrangements that have been made to complete the disclosures.**

The parties have not yet exchanged initial disclosures. The parties agree to exchange initial disclosures by February 27, 2026.

**10.     Describe the proposed agreed discovery plan, including:**

**A. Responses to all the matters raised in Rule 26(f)**

**i.   Rule 26(a) Initial Disclosures (Fed. R. Civ. P. 26(f)(3)(A))**

The parties agree to exchange initial disclosures by February 27, 2026.

**ii.  Subjects and Completion of Discovery (Fed. R. Civ. P. 26(f)(3)(B))**

Defendant's call records during the relevant time period; Defendant's communications with Plaintiff; the composition and viability of the proposed class; the allegations made in the Complaint; and Defendant's affirmative defenses. Plaintiff opposes bifurcation as there is likely to be an overlap between class and merits discovery such that conducting discovery in phases is impracticable and will likely delay rather than expedite the progress of the case.

GLS proposes that discovery be bifurcated, because it has unique, dispositive defenses to Plaintiff's individual claims, including its use of the RND, and the results GLS received back for the single phone number at issue. GLS anticipates that a motion for summary judgment would dispose of Plaintiff's individual claims and obviate the need for class discovery.

### iii. Disclosure of Discovery of ESI (Fed. R. Civ. P. 26(f)(3)(C)

The parties will strive to produce electronic documents in the form of multi-page, color, bates-numbered PDF images together with load files if reasonably available, or in native format. If possible, metadata shall be included in the load files to the extent the metadata is embedded in the individual electronic documents. If there are any issues with the production of ESI, the parties will meet and confer and attempt to resolve them informally without need for Court intervention. Non-electronic documents shall be produced as multi-page, color, bates-numbered PDF images.

### iv. Privilege (Fed. R. Civ. P. 26(f)(3)(D))

The parties do not anticipate any unusual or unique privilege issues. The parties are discussing entering into a Confidentiality Order to govern the production of confidential information and disclosures. The parties have taken the appropriate steps to preserve discoverable information, including ESI.

### v. Changes to Discovery (Fed. R. Civ. P. 26(f)(3)(E))

**Plaintiff's Position:** Plaintiff does not anticipate any need for changes in the limitations on discovery. Plaintiff opposes bifurcation and submits that discovery should proceed in the ordinary course on both class and merits issues.

Discovery relevant to commonality and typicality under Rule 23 will necessarily overlap with the merits. As the Supreme Court has explained, class certification analysis frequently "entail[s] overlap with the merits." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (2013). Here,

GLS's proposed "phase one" centers on its asserted RND safe harbor defense. But that defense turns on GLS's standardized dialing systems, vendor relationships, number-processing procedures, and compliance practices—issues that apply equally to the putative class. This kind of overlap is what caused another Court to deny a motion to bifurcate in another TCPA case:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

*Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (N.D. Ill. Jan. 3, 2023). Other courts have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Defendant's position describes a single calling process governed by uniform disclosures, uniform systems, and uniform recordkeeping practices. Where a defendant relies on a standardized lead-generation and consent process, the validity, scope, and application of that process is necessarily common proof. As another federal court held earlier this year while rejecting bifurcated discovery in a TCPA class action:

> Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater

6

> demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation.

*Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025). Likewise, while rejecting a substantially similar bifurcation request from a TCPA class action another court in Texas wrote:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).
>
> And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).
>
> Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).
>
> In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.
>
> Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate

>a TCPA class action and noting that individual and class discovery claims typically overlap).
>
>And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").
>
>And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025). This Court should do the same. GLS's reliance on the Reassigned Numbers Database is not an individualized issue. Whether GLS queried the RND, how it interpreted results, how frequently it scrubbed numbers, what procedures governed RND use, and whether its practices satisfy 47 C.F.R. § 64.1200(m) are all questions subject to common proof. If GLS contends that RND compliance shields it from liability, that contention necessarily turns on standardized policies and systemic conduct—not Plaintiff-specific facts.

As such, bifurcation here would not promote the "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. Because the same discovery—GLS's dialing systems, prerecorded message files, consent procedures, RND queries, and compliance policies—bears simultaneously on liability and Rule 23 requirements, bifurcation would require artificial line-drawing and likely motion practice over what constitutes "individual" versus "class" discovery. That approach would increase costs and delay resolution rather than streamline it.

8

Bifurcation would also prejudice Plaintiff. Prejudice includes the irretrievable loss of evidence and fading memories. *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008). *See also Hartley-Culp v. Credit Mgmt. Co,* 2014 U.S. Dist. LEXIS 130308, at *9 (W.D. Pa. September 15, 2014) (denying similar request in another TCPA case after "find[ing] prejudice to Plaintiff if discovery was bifurcated" in the same manner requested here); *Saleh v. Crunch, LLC*, 2018 U.S. Dist. LEXIS 36764, at *5 (S.D. Fla. Feb. 28, 2018) (denying a stay in a TCPA case and noting that the "fading memory of any witness" is prejudicial). Here, any delay increases the risk that calling data and third-party vendor records may be lost or destroyed—data which is often dispositive in TCPA cases.

The party seeking bifurcation bears the burden of demonstrating that judicial economy will be served and that no party will be prejudiced. *Trentham v. Hidden Mt. Resorts, Inc.*, No. 3:08-CV-23, 2010 U.S. Dist. LEXIS 1888, at *5 (E.D. Tenn. Jan. 11, 2010). GLS has not met that burden. Its speculation that summary judgment may resolve the case does not justify one-way, defense-focused discovery, particularly where the RND safe harbor is an affirmative defense—not a threshold element of Plaintiff's TCPA claim. Plaintiff therefore requests that discovery proceed concurrently on both class certification and merits issues under a standard scheduling order, without bifurcation.

**Defendant's Position:** GLS seeks a bifurcated discovery schedule. Phase one will address whether Plaintiff's individual TCPA claims fail because, among other reasons, GLS ran her alleged phone number through the RND and is entitled to the RND safe harbor. To be clear, application of the RND safe harbor as to Plaintiff's alleged phone number is unique to Plaintiff. Indeed, the way the safe harbor is drafted necessarily requires an individualized inquiry into whether the defense applies. To quote directly from the regulation:

9

> A person will not be liable for violating the prohibitions . . . of this section by making a call to a number for which the person previously had obtained prior express consent of the called party . . . but at the time of the call, the number is not assigned to the subscriber to whom it was assigned at the time such prior express consent was obtained if the person, bearing the burden of proof and persuasion, demonstrates that:
>
> (1) The person, based upon the most recent numbering information reported to the Administrator pursuant to paragraph (l) of this section, by querying the database operated by the Administrator and receiving a response of "no", has verified that the number has not been permanently disconnected since the date prior express consent was obtained as required in paragraph (a)(1), (2), or (3) of this section; and
>
> (2) The person's call to the number was the result of the database erroneously returning a response of "no" to the person's query consisting of the number for which prior express consent was obtained as required in paragraph (a)(1), (2), or (3) of this section and the date on which such prior express consent was obtained.

The plain language of the regulation makes clear that GLS's defense is individualized to Plaintiff, and requires analysis of whether: (1) the number at issue was not assigned to the borrower from whom GLS obtained consent at the time of the calls; (2) GLS ran Plaintiff's alleged phone number through the most recent version of the RND; (3) GLS received a response of "no" from the RND, indicating that Plaintiff's alleged number had not been permanently disconnected; and (4) GLS's alleged calls to Plaintiff were "the result of the database erroneously returning a response of 'no.'" As far as its alleged calls to Plaintiff, every one of these issues is unique to Plaintiff's phone number, when it was disconnected and reassigned, and whether the RND made a mistake as to her phone number. GLS should not be forced to endure expensive and intrusive class discovery when it has unique, individualized defenses that would put this case to an end. This is especially so when GLS is doing everything in its power to avoid calls to non-customers by using the RND.

None of the cases Plaintiff cites, including *Bond* from the Northern District in Texas, considered a bifurcation request from a defendant who used the RND. Indeed, the defendant's bifurcation motion in *Bond* did not raise specific defenses to the plaintiff's individual claims, but

10

rather made only general arguments about the efficiencies of bifurcation. *See*, *Bond*, No. 3:24-cv-2551-L-BN, Doc. 30 (Dec. 27, 2024). This case is nothing like *Bond*. While GLS intended to raise bifurcation in this case management statement to flag the issue for the Court, it would welcome the opportunity to brief the issue further if necessary.

If discovery is bifurcated, GLS submits that phase one discovery can be completed in 90 days, and motions for summary judgment filed within 21 days thereafter. GLS anticipates that its summary judgment motion on Plaintiff's individual claims will obviate the need for class discovery. GLS notes that this case was only just filed in mid-December 2025, and Plaintiff amended her complaint on February 4—just over two weeks ago. As this case is in its infancy, Plaintiff cannot credibly argue three months of discovery into her individual claims will cause any prejudice. On the other hand, if class discovery begins immediately, GLS would incur "hefty litigation expenses," and the Court forced to expend "extensive" judicial resources even though Plaintiff's individual claims lack merit. *See Vandersloot v. Charles Baratta LLC*, No. 24-CV-07096 (JMW), 2025 WL 2605343, at *4 (E.D.N.Y. Sept. 9, 2025) (finding that "limited discovery may save the parties, particularly Defendant, from the 'hefty litigation expenses and an extensive use of judicial resources' common in TCPA class actions") (quoting *Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc.*, No. 12-2132 (FLW), 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014)); *Cameron v. CHW Grp., Inc.*, No. 2:23-CV-00320-HCN-DBP, 2025 WL 2336513, at *2 (D. Utah Aug. 13, 2025) (collecting cases and acknowledging "the well-recognized fact that discovery in class actions is expensive and asymmetric, with defendants bearing most of the burdens") (quotations omitted).

GLS expects summary judgment on Plaintiff's individual claims may dispose of the case entirely. And the issues to be addressed are narrow and unique to Plaintiff and the single phone

11

number at issue—including, among other things, whether GLS has a complete defense because it ran Plaintiff's alleged number through the RND, and the RND did not indicate the number was eligible for reassignment. A brief, targeted discovery period would avoid the burden, time, and expense of class discovery, and preserve judicial resources. *See, e.g. Cameron*, 2025 WL 2336513, at *3 ("If the case can be resolved on those narrow dispositive issues relevant to Plaintiff and his individual claims, the limited resources of the court will be preserved. And, if Plaintiff moves forward past such discovery, he will be better positioned to represent the needs of the class."). Courts have repeatedly recognized the efficiencies to be gained from bifurcation, and exercised their broad discretion to bifurcate in putative TCPA class actions. *Pavelka v. Paul Moss Ins. Agency, LLC*, No. 1:22 CV 02226, 2023 WL 3728199, at *2 (N.D. Ohio May 30, 2023) ("In cases asserting both individual liability and potential 'class action' claims under the TCPA, courts have often approved bifurcating discovery in such cases where narrow, potentially dispositive, issues can be decided at the outset of a case prior to costly class discovery."). Indeed, just ten days ago, a judge in the Eastern District of Pennsylvania bifurcated discovery on a plaintiff's individual claims in a putative TCPA class action brought by one of Plaintiff's counsel here. *Newell V. Jr Capital, LLC*, 2:25-cv-1419, Doc. 28 (Feb. 10, 2026) (ordering initial discovery period to evaluate "whether the telephone number alleged to have been contacted was a residential or business number").

If GLS's summary judgment motion is denied, the Parties can expeditiously begin class discovery. If needed, GLS proposes that a class discovery schedule be set after the Court rules on GLS's summary judgment motion.

### vi. Other Orders (Fed. R. Civ. P. 26(f)(3)(F))

The parties do not anticipate the need for other orders at this time.

### B. When and to whom the plaintiff anticipates it may send interrogatories.

Plaintiff anticipates issuing written discovery requests, including interrogatories and requests for production, to Defendant within two (2) business days of the Rule 26(f) meeting.

### C. When and to whom the defendant anticipates it may send interrogatories.

GLS anticipates issuing written discovery requests, including interrogatories, requests for admission, and requests for production, to Plaintiff by February 25, 2026. GLS also anticipates serving a subpoena on Plaintiff's wireless carrier in this timeframe.

### D. Of whom and by when the plaintiff anticipates taking oral depositions.

Plaintiff anticipates taking the deposition of Defendant's corporate representative(s) pursuant to Rule 30(b)(6), as well as depositions of any individual witnesses identified through initial disclosures and discovery. At this time, Plaintiff is not aware of any anticipated Rule 45 third-party depositions but reserves the right to pursue such discovery. Plaintiff anticipates completing all depositions relevant to fact discovery by November 11, 2026, and requests that both parties have the same deadline.

### E. Of whom and by when the defendant anticipates taking oral depositions.

GLS anticipates taking Plaintiff's deposition, as well as depositions of any individual fact or expert witnesses identified through initial disclosures and discovery. GLS is unable to determine currently whether any third-party depositions are needed. If discovery is bifurcated, GLS anticipates that Plaintiff's deposition can be completed within 90 days of an order granting bifurcation.

F.  **When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B) and when the opposing party will be able to designate responsive experts and provide their reports.**

Plaintiff proposes that the party with the burden of proof will designate experts and serve Rule 26(a)(2)(B) reports by October 14, 2026. GLS will be able to designate responsive experts and serve their reports by November 13, 2026. The Parties expect that expert depositions will be completed by December 11, 2026.

Plaintiff further proposes that any motions to exclude expert testimony will be filed by January 15, 2027, with oppositions due February 12, 2027, and replies due February 24, 2027.

G.  **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

Plaintiff anticipates taking the depositions of any experts designated by Defendant. Consistent with Plaintiff's proposed schedule, and requests that all expert depositions are completed by December 9, 2026.

H.  **List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).**

GLS anticipates taking depositions of any experts Plaintiff designates. GLS expects that expert depositions can be completed by December 11, 2026.

**11.    If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

As noted, GLS proposes a bifurcated discovery schedule. Phase one would focus on the merits of Plaintiff's individual claims and issues unique to Plaintiff. Among other things, GLS received no indication from the RND that the at-issue telephone number had been reassigned and is entitled to the RND's safe harbor. GLS expects that phase one can be completed within 90 days, and summary judgment motions filed within 21 days of the close of phase one. As set forth above,

limited discovery into the merits of Plaintiff's claims will avoid the time, burden, and expense of extensive class discovery, and preserve judicial resources. While GLS believes phase one will dispose of the case entirely and obviate the need for class discovery, GLS expects that the Parties can promptly begin class discovery if GLS's summary judgment motion is denied.

**12.     Specify the discovery beyond initial disclosures that has been undertaken to date.**

The parties have not yet exchanged formal discovery requests, but have informally discussed Plaintiff's claims and the communications at issue, prompting Plaintiff to file an Amended Complaint on February 4, 2026.

**13.     State the date the planned discovery can reasonably be completed.**

Completion of fact discovery: November 11, 2026

Completion of all discovery: February 24, 2027

**14.     Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

During the parties' Rule 26(f) conference, the parties discussed the possibility of resolving this matter without the need for protracted litigation. The parties agree that early evaluation of the relevant records and discovery may facilitate meaningful settlement discussions. Private mediation was also identified as a potential avenue for resolution at an appropriate time.

**15.     Describe what each party has done or agreed to do to bring about a prompt resolution.**

The parties are exchanging information and communicating openly about this case. The parties have agreed to exchange initial disclosures within 14 days of the Rule 26(f) meeting, and

to continue discussing the potential for early mediation following the exchange of sufficient information to evaluate the claims and defenses.

**16.     From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable and state when such a technique may be effectively used in this case.**

Plaintiff submits that mediation appears to be a reasonably suitable alternative dispute resolution mechanism. Plaintiff believes mediation may be most effective after the completion of initial disclosures and limited discovery sufficient to permit an informed evaluation of liability, including issues relevant to class size.

GLS is open to mediation at a mutually agreeable time. However, GLS does not believe the case should be mediated on a class-wide basis, particularly at this early stage. GLS submits that discovery should be completed on Plaintiff's individual claims before any mediation is scheduled.

**17.     Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The parties do not consent to the magistrate judge.

**18.     State whether a jury demand has been made and if it was made on time.**

Yes. Plaintiff demanded a trial by jury on December 16, 2025, when Plaintiff filed the complaint.

**19.     Specify the number of hours it will take to present the evidence in this case.**

At this early stage, the parties estimate that the presentation of evidence will require approximately 15-20 hours per side, or 5-7 days.

**20.     List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

There are no pending motions that could be ruled on at the initial pretrial and scheduling conference. If needed, GLS will submit additional briefing on its bifurcation proposal within five days of the initial conference.

**21.     List other motions pending.**

There are no pending motions.

**22.     Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

GLS believes its use of the RND establishes a complete defense to Plaintiff's individual TCPA claims. Otherwise, the parties do not believe this action presents issues that are unusual or peculiar to TCPA class litigation. Plaintiff claims prerecorded or artificial voice calls were placed to cellular telephone numbers without the requisite consent, including calls to numbers not associated with the intended recipient. The anticipated discovery, such as call detail records, dialing system information, consent records, and third-party vendor agreements, is typical of TCPA cases of this nature.

\\

\\

\\

\\

\\

\\

\\

\\

**23.** **List the names, bar numbers, addresses and telephone numbers of all counsel.**

| | |
|---|---|
| *Counsel for Plaintiff* | *Counsel for Global Lending Services LLC* |
| Anthony Paronich<br>Massachusetts Bar: BBO 678437<br>**PARONICH LAW, P.C.**<br>350 Lincoln Street, Suite 2400<br>Hingham, MA 02043<br>Telephone: (617) 485-0018<br>anthony@paronichlaw.com<br><br>Carly M. Roman *(pro hac vice)*<br>Illinois Bar: 6334371<br>California Bar: 349895<br>Arizona Bar: 040895<br>**STRAUSS BORRELLI PLLC**<br>980 N Michigan Ave Ste 1610<br>Chicago, IL 60611-7502<br>Facsimile: (872) 263-1109<br>croman@straussborrelli.com | Sabrina A. Neff<br>**HUSCH BLACKWELL, LLP**<br>TBN# 24065813<br>600 Travis Street, Suite 2350<br>Houston, Texas 77002<br>(713) 647-6800 – Telephone<br>(713) 647-6884 – Facsimile<br>sabrina.neff@huschblackwell.com |

*[Counsel signatures to follow on next page.]*

RESPECTFULLY SUBMITTED AND DATED this February 20, 2026.

/s/ Anthony Paronich
Anthony Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100
anthony@paronichlaw.com

/s/ Carly M. Roman
Carly M. Roman *(pro hac vice)*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave Ste 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
croman@straussborrelli.com

*Counsel for Plaintiff and the Proposed Class*


/s/ Sabrina A. Neff
Sabrina A. Neff
**HUSCH BLACKWELL, LLP**
TBN# 24065813
600 Travis Street, Suite 2350
Houston, Texas 77002
(713) 647-6800 – Telephone
(713) 647-6884 – Facsimile
sabrina.neff@huschblackwell.com

*Counsel for Global Lending Services LLC*