# HUSCH BLACKWELL

**Ryan L. DiClemente**
Partner

1801 Pennsylvania Avenue, NW
Suite 1000
Washington, DC  20006
Direct: 202.378.5794
Fax: 202.378.2319
ryan.diclemente@huschblackwell.com
Not licensed in Washington DC, office affiliation only

March 23, 2026

<u>Via Email</u>
Hon. Yvonne Ho, U.S.M.J.
Rachel Willborg, Case Manager to Judge Yvonne Ho
515 Rusk Street, Room 7525
Houston, TX 77002
Rachel_Willborg@txs.uscourts.gov

> Re:    Emily McNamara, individually and on behalf of all others similarly situated v.
>        Global Lending Services LLC
>        Civil Action No. 4:25-cv-06058
>        **Request for Pre-Motion Conference**

Dear Judge Ho:

Pursuant to Your Honor's Court Procedures, Plaintiff Emily McNamara and Defendant Global Lending Services LLC ("GLS") jointly submit this letter regarding a discovery dispute we have been unable to resolve.

**GLS's Position**: This is a putative class action under the Telephone Consumer Protection Act ("TCPA"). McNamara alleges that GLS violated the TCPA by making prerecorded calls to her cell phone in October and November 2025 without her consent. McNamara seeks to represent a class of individuals who received similar calls from GLS.  The parties appeared for a pretrial conference on March 6, 2026, and Judge Hanen referred this case to Your Honor for all pretrial matters on March 12.

GLS is a financial services company that offers financing for auto loans. It does not place marketing calls and does not intend to call anyone other than its own borrowers to deliver messages about their loans. In this case, GLS called the phone number at issue intending to reach one of its customers. Unbeknownst to GLS, McNamara claims that the number it called was reassigned from GLS's customer to McNamara in May 2025.

To avoid this exact situation, GLS uses the Federal Communications Commission's Reassigned Number Database ("RND"), a federal database designed to prevent inadvertent calls to numbers that have been reassigned. On a monthly basis, mobile phone carriers provide a list of phone numbers to the RND that have been permanently disconnected and are eligible for

# HUSCH BLACKWELL

reassignment to a new user. Callers can query the RND to determine whether there is any indication the number they intend to call may have been reassigned. If the RND wrongly indicates a number has not been reassigned, callers are not liable under the TCPA. The safe harbor is designed to encourage use of the database and shield well-meaning callers from liability.

In this case, GLS did everything in its power to avoid inadvertent calls to McNamara. GLS queried her phone number to determine whether there was any indication it had been reassigned. Each time GLS queried the RND, the RND returned a "no" result, meaning there was no record the number has been disconnected. Relying on these results, GLS made calls to the number intending to reach its customer.

GLS's reliance on the RND establishes a complete defense to McNamara's individual claims. GLS proposes a bifurcated schedule that begins with a 90-day discovery period to determine whether GLS is entitled to the RND's safe harbor. The initial discovery period would address issues unique to McNamara, including whether: (1) the number at issue was not assigned to the borrower from whom GLS obtained consent at the time of the calls; (2) GLS ran McNamara's alleged phone number through the most recent version of the RND; (3) GLS received a response of "no" from the RND; and (4) GLS's calls to McNamara resulted from incorrect information from the RND. GLS anticipates filing a summary judgment motion on McNamara's individual claims within 21 days of the close of phase one discovery.

**Plaintiff's Position**: McNamara opposes GLS's proposed schedule and seeks to proceed with class discovery immediately. Discovery in this case should proceed in a single phase consistent with the Court's Scheduling Order (Dkt. 23), which already contemplates unified fact and class discovery through February 2027.

GLS's request is premised on the assertion that its reliance on the Reassigned Number Database ("RND") presents an individualized issue that can be resolved through limited discovery. That premise is incorrect. GLS's RND defense is not a narrow, plaintiff-specific issue—it turns on company-wide policies and practices that are central to both liability and class certification. Whether those standardized practices satisfy 47 C.F.R. § 64.1200(m)—including how GLS queries the RND, interprets results, and integrates those results into its calling systems—are questions subject to common proof and will apply equally to the putative class.

Because these issues overlap entirely with Rule 23 requirements (including commonality, predominance, and typicality), bifurcation would not streamline the case. Instead, it would require artificial line-drawing between "individual" and "class" discovery, leading to motion practice and delay. Courts routinely reject bifurcation in TCPA cases for this reason. As one Texas court recently explained, "there is considerable overlap between discovery relevant to the merits of [plaintiff's] individual claims and issues of class certification," such that bifurcation "would not promote efficiency." *Bond v. Folsom Ins. Agency LLC*, 2025 WL 863469, at *2–3 (N.D. Tex. Mar. 19, 2025).

Moreover, GLS's proposal would result in one-sided, defense-driven discovery focused exclusively on its affirmative defense. The RND safe harbor is not an element of Plaintiff's claim—it is a defense on which GLS bears the burden. Allowing discovery to proceed solely on

# HUSCH BLACKWELL

that issue would improperly delay Plaintiff's ability to obtain class-wide evidence necessary to prosecute her claims. GLS characterizes its RND defense as "unique" to Plaintiff, but that characterization ignores how the defense operates in practice. Whether GLS properly queried the RND, used the "most recent" data, and relied on those results in its dialing systems depends on standardized policies, vendor integrations, and system architecture—not individualized facts. These are precisely the types of issues that courts find inappropriate for phased discovery.

Finally, this case is already governed by a comprehensive Scheduling Order entered after the parties presented their competing positions to the Court. GLS's request would effectively unwind that order and introduce unnecessary delay in a case that is proceeding in the ordinary course.

For all of these reasons, GLS has not met its burden to show that bifurcation would promote judicial economy or avoid prejudice. To the contrary, its proposal would delay the case, increase discovery disputes, and interfere with Plaintiff's ability to obtain classwide evidence. Plaintiff respectfully requests that the Court deny GLS's request and permit discovery to proceed under the existing Scheduling Order.

**Summary of Prior Conferences**: The parties have conferred at length on this issue. At the outset of the case, GLS's counsel identified GLS's use of the RND and indicated it intended to seek a bifurcated discovery schedule. Counsel first discussed this issue in a video conference on January 22, 2026, and submitted a joint case management plan, on February 20, 2026, which outlined their positions.  After the pretrial conference on March 6, 2026, GLS's counsel contacted McNamara's counsel by email and asked whether additional conferencing on this issue would be productive. McNamara's counsel confirmed that McNamara remained opposed to a bifurcated discovery schedule.

Based on the foregoing, the parties respectfully request a pre-motion conference pursuant to Your Honor's Court Procedures to assist in resolving this dispute. We appreciate your time and attention to this case.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*s/Ryan L. DiClemente*
Ryan L. DiClemente

cc:  Anthony Paronich and Carly Roman (via email)